IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | |
| ) | |
| WILSON NUYILA TITA, et al., ) | Case No. 21-cr-334-CCB |
| ) | |
| Defendants. ) | |
| _____ ) | |

### DEFENDANTS' MOTION IN *LIMINE* TO ADMIT EVIDENCE OF VIOLENCE COMMITTED BY THE GOVERNMENT OF CAMEROON

Defendants Wilson Nuyila Tita, Eric Nji and Wilson Che Fonguh, by and through undersigned counsel, respectfully submit the following Defendants' Motion *in Limine* to Admit Evidence of Violence Committed by the Government of Cameroon ("GOC").

### ARGUMENT

The Defendants seek to introduce evidence that they sought to hide the weapons alleged to have shipped in this case not from U.S. authorities—as the prosecution alleges—but from the GOC and its agents. The Defendants, the defense expert, and several alleged co-conspirators may testify that the GOC violently retaliated against individuals who participated in protest or opposition activities in Southern Cameroon, and that they were therefore afraid the GOC would retaliate against their friends and families if they were linked to the weapons in this case.

The Superseding Indictment focuses in large part on the Defendants' efforts to keep their activities secret: using code words for rifles/bullets, hiding the weapons in the shipping container, and sending the weapons to Nigeria instead of directly to Cameroon. For example, Count One of the Superseding Indictment alleges that the object of the conspiracy was, in part, "to conceal from the United States those items that were being shipped from the Port of

Baltimore in Maryland to Nigeria and at least one other location in Africa." ECF No. 44 ¶ 13. The Superseding Indictment further alleges that the Defendants "and other co-conspirators communicated, often using code words, about their efforts and plans to ship weapons and ammunitions … via the WhatsApp online encrypted messaging application" *Id.* at ¶ 15. The Superseding Indictment also alleges that at least 13 overt acts in this case were the Defendants' communications about keeping their activities secret. *Id.* at ¶¶ 24a-b, f, j-l, p-s, u-y, ff.

Similarly, the government's proposed jury instructions regarding the conspiracy count precisely track the 13 alleged overt acts in the Superseding Indictment.[1] The government also requested multiple jury instructions which demonstrate that evidence of secrecy in the WhatsApp communications is central to the government's case.[2] Finally, the government has requested Jury Instruction "*Guilty Knowledge from Clandestine Behavior*" as a jury instruction. ECF 49 at 3. These instructions illustrate that the secrecy is central to the government establishing its burden of proof. As such, the Defendants must be allowed to present contrary evidence that efforts to maintain secrecy do not reflect consciousness of guilt regarding the pending charges.

The government's claims that the alleged co-conspirators attempted to hide their activities from U.S. authorities are directly contradicted by the statements of government witnesses. For example, when the government investigators were interrogating Witness 1, the head of the alleged conspiracy, they acknowledged concerns about retribution, promised to keep

---

[1] *See* ECF 49, Requested Jury Instruction 39.

[2] *See* ECF 49, Requested Jury Instructions 57 (smuggling count includes "conceals" as an act that can prove the count); Proposed Jury Instruction 55 (Knowingly is determined "not by accident"); and Proposed Jury Instruction 37 (Proof of Conspiracy includes the language "However, since a conspiracy is, by its very nature, characterized by **secrecy**, you may infer its existence from the circumstances of this case and conduct of the parties involved.") (emphasis added).

his statements under seal, and offered protection for him and his family. In response, Witness 1 said "the only thing that I'm afraid of [is] the Cameroon government." [3]

Witness 1 and other government witnesses explain that their fears are based on the GOC's previous acts of violent retaliation, including an apparent killing in Maryland that Witness 1 suspected was orchestrated by the GOC, and numerous violent attacks against dissidents' families and friends in Cameroon. [4]  In fact, nearly every alleged co-conspirator was, according to the recently disclosed government documents, motivated by personal accounts of GOC violence directed at them, their friends or their family members.  Many of them fled Cameroon to avoid this kind of persecution as well.  The prosecutors were clearly made aware of these fears during their interrogations of these witnesses, and by Defendant Tita's motion to seal the indictment until he could change his name.[5]

---

[3] During the interrogation, the following exchange occurred between the investigators and Witness 1:

> ***Investigator***: "We're – everything is under seal. Like your arrest and the search warrant today that happened at your house, that's under what we call seal. That's a judge's order not to release any information about that. So, we do no press release, it's not public. You know, somebody might've seen us at your house today, you know, we can't control that. But we do not release any information and we're very sensitive to the situation going on in Cameroon and with your family and friends, and everybody involved. We don't want anyone to get hurt, you know, keep that in mind." USA-7700 at 2:32.
>
> *  *  *  *  *
>
> ***Witness 1***: "**I mean I'll tell you straight up, the only thing that I'm afraid of, I'm afraid of [unintelligible] the Cameroon government—**"
>
> ***Investigator 2***: "Coming after your friends and family because of this…we are very aware of that." *Id.* at 5:46 (emphasis added).

[4] *See* Government Discovery Document USA 7683-85 (testimony of Witness 1).

[5] In fact, Mr. Tita filed a motion to seal the indictment in order to protect himself and his family from GOC retaliation:  "Members of Mr. Tita's family unfortunately still live in Cameroon and the publication of his name in an indictment puts these family members at grave risk of retaliation.  Mr. Tita is so concerned about the safety of his family in Cameroon that he is in the process of changing his name from Wilson Nuyila Tita to Martin Nji Tita."  ECF No. 24 at 1-2.  Magistrate Judge DiGirolamo temporarily granted Mr. Tita's oral motion to seal the

Moreover, the Defendants' expert witness fled Cameroon under similar circumstances. Mr. Tembon is a native of the Anglophone section of Cameroon who was forced to flee the country in 2018 due to his opposition to the GOC's human rights abuses in general and threats against him in particular. Because his wife is an American citizen, he was able to seek refuge in the United States. *See* ECF No. 54 at 2. The Defendants faced similar circumstances, including threats to their friends and families—especially after the Department of Justice issued a press release stating that they had been indicted.[6]

In fact, the Defendants were not trying to evade U.S. authorities. Rather, the Defendants sought to evade Cameroonian authorities in order to avoid violent retaliation by the GOC against the Defendants' friends, families, and neighbors in Cameroon.[7] This view is further corroborated by the government witness who was the head of the alleged conspiracy, and raised similar concerns in statements he has given to the government.[8]

---

indictment pending the filing of the motion to seal. Clearly, the prosecutors were on notice about the potential danger of retaliation that the Defendants face.

[6] Department of Justice, "Three Maryland Residents Facing Federal Indictment for Attempting to Illegally Export Arms and Ammunition to Nigeria," (August 27, 2021) (publishing the Defendants' names, their ages and the towns in which they reside). https://www.justice.gov/usao-md/pr/three-maryland-residents-facing-federal-indictment-attempting-illegally-export-arms-and.

[7] The government's repeated efforts to characterize this as "irrelevant motive" evidence, ECF No. 61 at 2-4, rather than a rebuttal to the government's consciousness of guilt argument, ignores the obvious facts that: (a) its Superseding Indictment places the effort to secret the weapons—allegedly from U.S. officials--at the center of its allegations against the Defendants; (b) its proposed consciousness of guilt jury instruction makes this a key factual issue for the jury to determine; (c) the government investigators' made statements about the danger to Witness 1's family which clearly acknowledge the issue of violent retribution and (d) there is extensive evidence that the GOC has committed such acts of violent retaliation, including against the friends and families of defendants and witnesses in this case.

[8] The government acknowledges, as it must, that "the charges, and the focus of the government's evidence will be knowing violations of U.S. laws relating to exporting goods—the *sine qua non* of the Superseding Indictment." ECF No. 61 at 5. The evidence that the Defendants seek to offer at trial is that the secreting of the weapons is not evidence of knowing violations of U.S. laws. Instead, it was an effort to prevent the GOC from intercepting the weapons and/or retaliating against the alleged co-conspirators' friends and families. Denying the Defendants the chance to offer this evidence would amount to the Court essentially directing a verdict for the government on this issue.

To an American jury, the claim that the Cameroonian government might commit acts of violent retribution against its citizens might not be viewed as credible, because it would be fundamentally different than their experience in the United States. The background information that the defendants intend to present—through government and defense witnesses—will explain that such retaliation not only occurred, but included murder, rape, torture, incarceration, and the burning of homes, schools, and medical centers. This evidence will demonstrate that the defendants certainly had a reasonable concern about possible retaliation if the GOC discovered their actions. If the jurors are made aware of the GOC's retaliatory conduct, they may evaluate the credibility of this defense in a different light.

Limiting the admission of the evidence of the civil war to the fact of the civil conflict without admitting key details of the conflict would prevent the defense from its constitutional right to present a complete defense. *See Holmes v. South Carolina*, 547 U.S. 319, 321 (2006). As Justice Alito expressly stated, "[t]his right is abridged by evidence rules that infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Id.* at 324-325 (collecting cases that show arbitrary rules); *see also Washington v. Texas*, 388 U.S. 14, 19 (1967) ("The right to offer the testimony of witnesses, and to complete their attendance, if necessary is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury, so *it* may decide where the truth lies."); *United States v. Nixon*, 418 U.S. 683, 709 (1974) ("The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts).

WHEREFORE, for the foregoing reasons the Defendants respectfully request that this Court grant the Defendants' Motion *in Limine* and admit evidence of the Cameroonian civil war and specific acts of violence at trial.

                                      Respectfully submitted,

_____/s/_____
David Benowitz
Bar No. 17672
*Counsel for Wilson Tita*
Price Benowitz LLP
409 Seventh Street, NW, Suite 200
Washington, DC  20004
(202) 271-5249
david@pricebenowitz.com


_____/s/_____
Glenn Ivey
Bar No. 06187
*Counsel for Defendant Wilson Fonguh*
The Ivey Law Firm
6411 Ivy Lane, Suite 304
Greenbelt, MD  20770
(301) 537-1451
ivey@iveyleveton.com


_____/s/_____
Richard S. Basile, Esq.
CPF: 7800610005
Law Offices of Richard S. Basile
6305 Ivy Lane #510
Greenbelt, MD 20770
T: (301) 441-4900
F: (301) 441-2404
rearsb@gmail.com
*Attorney for Defendant Nji*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of April, 2022, I caused the foregoing Motion *in Limine* to Admit Evidence of Violence Committed by the Government of Cameroon to be filed with the Clerk of the Court via the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

_____/s/_____
Glenn Ivey, Esq.