# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA      *

    v.                   *      Criminal Action No. RDB-21-334

WILSON CHE FONGUH,      *

    *Defendant.*           *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>MEMORANDUM OPINION</u>

On May 9, 2022, following a ten-day trial, a federal jury found Wilson Che Fonguh ("Defendant" or "Mr. Fonguh") guilty of one count each of (1) conspiracy, in violation of 18 U.S.C. § 371; (2) transportation of firearms with obliterated serial numbers, in violation of 18 U.S.C. § 922(k); and (3) smuggling, in violation of 18 U.S.C. § 554(a) in relation to his participation in a conspiracy with two co-defendants to smuggle arms to his native country of Cameroon. (ECF No. 108; ECF No. 44.) On May 25, 2023, this Court sentenced Mr. Fonguh to a total of 63 months' imprisonment, followed by two years of supervised release.[1] (ECF No. 221.) Mr. Fonguh is now forty-four years old and currently incarcerated at Baltimore Residential Reentry Management with a projected release date of February 17, 2027. *Find an Inmate*, Fed. Bureau Prisons, https://bop.gov/inmateloc (search by register number: 62090-509).

---

[1] At the time of Mr. Fonguh's jury trial, this case was assigned to Judge Blake of this Court. Thereafter, it was transferred to the undersigned judge for sentencing.

1

Presently pending before this Court is Defendant's pro se Motion for Compassionate Release (ECF No. 246) ("Motion for Compassionate Release" or "Defendant's Motion").[2] In his Motion, Mr. Fonguh argues that his need to care for his mother, combined with sentencing disparities, his rehabilitation while incarcerated, and his asserted minimal propensity to recidivate constitute extraordinary and compelling reasons for compassionate release. (ECF No. 246; ECF No. 246-8 *SEALED*.) The relevant submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons that follow, Defendant's Motion for Compassionate Release (ECF No. 246) is DENIED.

## BACKGROUND

Between 2017 and 2019, Mr. Fonguh joined and assisted a group of fellow Cameroonian Americans—nicknamed the "Peanut Project" by its members—to smuggle "weapons and ammunition to Anglophone fighters in Cameroon who were battling the Francophone government's forces." *United States v. Nji*, 159 F.4th 259, 263 (4th Cir. 2025), *cert. denied*, —S. Ct.—, 2026 WL 795080 (Mar. 23, 2026). The group frequently met in the basement of their leader, Tamufor St. Michael, (which they coined "the lab") to secretly grind off the serial numbers of at least twenty-eight firearms; conceal those weapons, ammunition, and "other military equipment" in compressor tanks; and ship the tanks from the Port of Baltimore to Nigeria for eventual ground transport to Cameroon. *Id.* at 263–64.

On August 26, 2021, a federal grand jury sitting in Baltimore returned a four-Count Indictment charging Mr. Fonguh and his co-defendants, Wilson Nuyila Tita ("Mr. Tita") and

---

[2] Also pending before this Court is Defendant's pro se Motion to Reduce Sentence pursuant to Amendment 821 (ECF No. 243) ("Amendment 821 Motion"). That Amendment 821 Motion will be addressed by separate opinion.

Eric Fru Nji ("Mr. Nji"), (collectively, "Defendants") in relation to their efforts to transport arms. (ECF No. 1.) On March 17, 2022, a federal grand jury returned the operative five-Count Superseding Indictment, charging Defendants with (1) conspiracy, in violation of 18 U.S.C. § 371 (Count One); (2) Violation of the Arms Export Control Act, 22 U.S.C. § 2778, and associated federal regulations (Count Two); (3) Violation of the Arms Export Control Reform Act, 50 U.S.C. § 4819, and an associated federal regulation (Count Three); (4) Transportation of Firearm with Obliterated Serial Number, in violation of 18 U.S.C. § 922(k) (Count Four); and (5) Smuggling, in violation of 18 U.S.C. § 554(a) (Count Five). (ECF No. 44.) All three Defendants pleaded not guilty as to all Counts. (ECF No. 90 *SEALED*; 91 *SEALED*; 92 *SEALED*.)

Following a ten-day trial, the jury convicted Defendants of conspiracy as charged in Count One, transportation of firearms with an obliterated serial number as charged in Count Four, and smuggling as charged in Count Five. (ECF No. 108 at 1, 4, 5.) The jury acquitted Defendants as to the arms charges in Counts Two and Three. (*Id.* at 2–3.) On May 25, 2023, this Court sentenced Mr. Fonguh to 60 months' imprisonment as to Count One, 60 months' imprisonment as to Count Four, and 63 months' imprisonment as to Count Five, each to run concurrently for a total term of 63 months of incarceration, followed by two years' supervised release. (ECF No. 221 at 2–3.) Mr. Fonguh's co-defendants were also sentenced to a total term of imprisonment of 63 months' imprisonment followed by two years' supervised release. *See* (ECF No. 184 at 2–3; ECF No. 201 at 2–3.)

3

Defendants appealed their convictions and sentences to the United States Court of Appeals for the Fourth Circuit,[3] which affirmed this Court's decisions. (ECF No. 258.) Their subsequent petitions for rehearing en banc, (ECF No. 260), and for a writ of certiorari before the Supreme Court, (ECF No. 262), were denied. Since this direct appeal, Mr. Fonguh has filed a Motion to Reduce Sentence pursuant to the retroactive application of Amendment 821 to the U.S. Sentencing Guidelines, (ECF No. 243),[4] and the instant Motion for Compassionate Release, (ECF No. 246).

## STANDARD OF REVIEW

As Defendant has filed his Motion pro se, his Motion will be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

## ANALYSIS

The First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison. Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole discretion to file compassionate release motions with the Court. With the passage of the First Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant a reduction in sentence. The Act permits a defendant to seek a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

---

[3] The defendants appealed their cases individually, but the Fourth Circuit consolidated their appeals. *See United States v. Nji*, 159 F.4th 259, 265 (4th Cir. 2025), *cert. denied*, —S. Ct.—, 2026 WL 795080 (Mar. 23, 2026).

[4] As noted above, this Motion remains pending before this Court and will be addressed by subsequent opinion.

defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once these mandatory conditions are satisfied, this Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" warranting a reduction and after weighing the factors presented in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i).

## I.      Defendant Has Exhausted His Administrative Remedies.

Defendant has exhausted his administrative remedies. One of the mandatory conditions laid out in 18 U.S.C. § 3582(c) requires a defendant to demonstrate that "[he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* § 3582(c)(1)(A). In this case, the warden received Mr. Fonguh's Petition for Compassionate Release Questionnaire on April 15, 2024, and more than thirty days have passed since that time. (ECF No. 246-1 at 1; ECF No. 246-8 *SEALED* at 6, 9; ECF No. 248; ECF No. 248-1.) Accordingly, Mr. Fonguh has exhausted his administrative remedies.

## II.     Defendant Has Not Demonstrated Extraordinary and Compelling Reasons that Warrant Compassionate Release.

Mr. Fonguh has not demonstrated the extraordinary and compelling circumstances necessary for compassionate release. The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t). The Commission has identified six possible circumstances that viewed separately or together may establish "extraordinary and compelling reasons" for a sentence reduction. These reasons include:

> (1) a serious medical circumstance of the defendant;
> (2) a defendant who is 65 years old that suffers from serious health deterioration and has served either 10 years or 75 percent of his or her term;
> (3) the death or incapacitation of an immediate family member;
> (4) the defendant being a victim of abuse while in custody;
> (5) other reasons of similar gravity as (1)–(4); and
> (6) unusually long sentence if the defendant has served at least ten years.

U.S.S.G. § 1B1.13(b)(1)–(6). In this case, Mr. Fonguh raises arguments for relief based on the need to care for his ailing mother, sentencing disparities, asserted low recidivism risk, and rehabilitation. (ECF No. 246 at 1–2; ECF No. 246-8 *SEALED* at 6–7, 9–10.) His assertion of his mother's need for care falls under § 1B1.13(b)(3), while his arguments as to sentencing disparities, recidivism, and rehabilitation fall under § 1B1.13(b)(5). The Court addresses each asserted basis for relief in turn.

### A. Caring for Defendant's Mother is Not an Extraordinary and Compelling Reason Warranting Compassionate Release.

Mr. Fonguh first contends that he is "the only available caregiver" for his mother, who immigrated to the United States from Cameroon in July 2019. (ECF No. 246 at 1; ECF No. 246-4 at 2.) The U.S. Sentencing Guidelines provide that "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" may constitute an extraordinary and compelling reason justifying a defendant's early release. U.S.S.G. § 1B1.13(b)(3)(C). As explained below, however, Mr. Fonguh's mother is not incapacitated within the meaning of the Sentencing Guidelines, and, even if she were, he is not her only available caregiver.

### 1. Mr. Fonguh's Mother is Not "Incapacitated" Under U.S.S.G. § 1B1.13(b)(3).

The Sentencing Commission has not defined "incapacitation" in the context of compassionate release, *see id.* § 1B1.13(b)(3), and few courts appear to have addressed this issue since the November 2023 amendments to U.S.S.G. § 1B1.13.[5] *See United States v. Taveras*, 731 F. Supp. 3d 94, 98–100 (D. Mass. 2024) (surveying caselaw). In *United States v. Taveras*, 731 F. Supp. 3d 94 (D. Mass. 2024), the District of Massachusetts concluded that earlier courts' reliance on the Bureau of Prisons' definition of "incapacitation" would be inconsistent with legislative intent in the First Step Act and instead applied the relevant state law definition of "incapacitation" in the guardianship context, which mirrored the Uniform Probate Code ("UPC"). *See id.* at 98–100. In an unpublished opinion, the U.S. Court of Appeals for the Fourth Circuit deemed the *Taveras* opinion "well-reasoned" but considered both the state guardianship law and BOP's definitions of incapacitation. *United States v. Rosario-Cruzado*, No. 24-6365, 2025 WL 1540932, at *2–3 (4th Cir. May 30, 2025) (citations omitted).[6] The Fourth Circuit declined to define incapacitation, but it determined that "it is proper for courts to consider the Bureau of Prison[s] Program Statement as helpful guidance while keeping in mind that it might be more restrictive than the permissible standard for compassionate release." *Id.*

---

[5] Prior to the November 2023 amendments, "[t]he Guidelines '[were] not directly applicable to defendant-filed motions' under § 3582(c)." *United States v. Whisonant*, Crim. No. ELH-17-191, 2023 WL 4243232, at *8 (D. Md. June 26, 2023) (quoting *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021)). In May 2023, however, the Sentencing Commission promulgated amendments to § 1B1.13, which, effective November 2023, are "expressly applicable to defendant-filed motions under § 3582(c)(1)(A)." *United States v. Samuel*, Crim. No. ELH-16-0117, 2023 WL 8650366, at *5 (D. Md. Dec. 14, 2023); *see also United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024) (discussing binding Guidelines amendments defining an "extraordinary and compelling" reason for compassionate release).

[6] In *United States v. Rosario-Cruzado*, No. 24-6365, 2025 WL 1540932 (4th Cir. May 30, 2025), the Fourth Circuit addressed incapacity in the context of the relevant Virginia guardianship law. *Id.* at *2. Mr. Fonguh was prosecuted in Maryland, however, so this Court applies the relevant Maryland guardianship law.

at *2 n.3, *3 (citation omitted). As explained further below, Mr. Fonguh's mother fails to meet the definition of incapacity under either the BOP's definition or the definitions supplied under Maryland guardianship law.

The BOP Program Statement does not define incapacitation with respect to parents of inmates, but it offers definitions with respect to caregivers of children of inmates and spouses or registered partners of inmates. *See* Program Statement § 5050.50(5)–(6) (Fed. Bureau Prisons 2019). In this case, Defendant's mother would only need to care for herself, so the BOP's definition of incapacitation as to a "spouse or registered partner" proves most relevant to assessing whether Mr. Fonguh's mother is incapacitated. Under that definition, a "spouse or registered partner" is incapacitated in the following circumstances:

> Suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or . . . [a] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse or registered partner's mental capacity or function), but may not be confined to a bed or chair.

*Id.* § 5050.50(6). Thus, the BOP recognizes two forms of incapacity: (1) physical incapacitation based on complete confinement, and (2) cognitive incapacitation. To meet any definition of incapacity, the BOP requires "[v]erifiable medical documentation of the incapacitation." *Id.*

Mr. Fonguh's mother does not satisfy either form of incapacitation. As to physical incapacitation, she is able to go for walks, thoroughly participate in her Church, and frequently return to Cameroon "for medical and spiritual treatment from [her] family Tribal Doctor," (ECF No. 246-4 at 2, ECF No. 246-5 at 2–4), such that she is not "totally confined to a bed or chair," as required under the first BOP definition. *See* Program Statement, § 5050.50(6). As

to cognitive incapacitation, Mr. Fonguh claims that his mother suffers from diabetes, PTSD, anxiety, depression, arthritis, hypertension, high cholesterol, and old age.[7] (ECF No. 246-3 at 1, ECF No. 246-4 at 4, ECF No. 246-8 *SEALED* at 7.) Although undoubtedly difficult, these conditions fall short of the examples of physical neurological impairment provided by the BOP in its definition of cognitive incapacitation. *See* Program Statement, § 5050.50(6). Even assuming, *arguendo*, that Mr. Fonguh's mother met either definition, Mr. Fonguh has not provided the required "verifiable medical documentation of the incapacitation." *Id.* He has provided one note from his mother's Cameroonian Tribal Doctor, which does not assert incapacitation or even a PTSD diagnosis.[8] (ECF No. 246-3 at 1.) Accordingly, Mr. Fonguh has not demonstrated that his mother satisfies the BOP's definition of incapacitation.

Nor has he shown that his mother satisfies the potentially less restrictive standard of incapacity under Maryland guardianship law. *See Rosario-Cruzado*, 2025 WL 1540932, at *2 n.3. Like the relevant laws at issue in *Taveras* and *Rosario-Cruzado*, Maryland guardianship law imposes a "stringent standard" for incapacity, such as requiring "signed and verified certificates of competency" from at least two licensed health care professionals. MD. CODE ANN., EST. & TRUSTS § 13-705(c)(2). Indeed, § 13-705(b)(1) of Maryland's Estates and Trusts Article defines "disabled person" warranting guardianship as a person who "lacks sufficient understanding or capacity to make or communicate responsible personal decisions, including

---

[7] Mr. Fonguh has also submitted documents noting that his mother "only communicates in [her] Native language 'pidgin' English, that is spoken in Southern Cameroons." (ECF No. 246-4 at 2); *see also* (ECF No. 246-8 *SEALED* at 7). Such language barrier does not bear on his mother's capacity within the definitions provided by the BOP and Maryland law.

[8] Furthermore, for a finding of incapacitation for compassionate release, the BOP requires "an explanation of who has been caring for the [parent] during the inmate's period of incarceration, as relevant." Program Statement, § 5050.50(6). Mr. Fonguh's mother has lived in Maryland since 2019, and it is not clear from the record who has been caring for her since his incarceration in 2023. (ECF No. 221 at 2; ECF No. 246-4 at 2–4.)

provisions for health care, food, clothing, or shelter, because of any mental disability, disease, habitual drunkenness, or addiction to drugs."[9]

In this case, Mr. Fonguh has not shown that his mother satisfies this definition. As noted above, his mother is able to go for walks, thoroughly participate in her Church, and frequently return to Cameroon for medical appointments, suggesting that she "live[s] a relatively independent life, with some assistance." *See Taveras*, 731 F. Supp. 3d at 100; (ECF No. 246-4 at 2, ECF No. 246-5 at 2–4). Moreover, as noted above, Maryland law requires "certificates of competency" from at least two licensed health care providers to obtain a finding of incapacity warranting guardianship. MD. CODE ANN., ESTS. & TRUSTS § 13-705(c)(2). This requirement mirrors the BOP's requirement of "[v]erifiable medical documentation of the incapacitation." Program Statement, § 5050.50(6). As noted above, however, Mr. Fonguh has provided only one note from *any* health care provider. (ECF No. 246-3 at 1.) This note is from a Cameroonian medical doctor, who asserts no licensure in the United States and does not declare Mr. Fonguh's mother incompetent. (*Id.*)

### 2. Even if Mr. Fonguh's Mother is Incapacitated, Mr. Fonguh is Not Her Only Available Caregiver.

Furthermore, even if Mr. Fonguh's mother were incapacitated, he has not established that he is her "only available caregiver," as required for relief under U.S.S.G. § 1B1.13(b)(3)(C). Mr. Fonguh asserts that he cares for his mother by (1) ensuring adherence to her diet and

---

[9] In the context of trusts, Section 14.5-103(m) of the Estates and Trusts Article defines "incapacity" as "the inability of an individual to manage the individual's property or financial affairs effectively due to: (1) Physical or mental disability; (2) Disease or illness; (3) Habitual drunkenness; (4) Drug addiction; (5) Imprisonment; (6) Compulsory hospitalization; (7) Detention by a foreign power; or (8) Disappearance." This Court does not apply this definition because the Fourth Circuit considered incapacity only in the context of guardianship laws. *See Rosario-Cruzado*, 2025 WL 1540932, at *2. Even if this definition were applicable, for the same reasons discussed above, Mr. Fonguh has not established that his mother is incapacitated thereunder.

medications, (2) ensuring she gets adequate exercise, (3) keeping in contact with her Tribal Doctor in Cameroon with semi-annual return visits thereto, (4) driving her to religious services, (5) offering financial support for living expenses, and (6) acting as "her constant companion [who] keeps her safe and happy."[10] (ECF No. 246-4 at 2–3; ECF No. 246-5 at 2–4; ECF No. 246-8 *SEALED* at 7.) As the *Taveras* court noted, however, when a parent has "access to a substantial network of care provided by [their] health insurance . . . [which] provides personnel to address each of [the parent]'s medical needs…cite[d] in the Motion" for compassionate release, that "network of care . . . precludes the Court from finding that [Defendant] is the 'only available caretaker' for his mother pursuant to the policy statements of the Sentencing Commission." 731 F. Supp. 3d at 100 (quoting U.S.S.G. § 1B1.13(b)(1)(C)). This network may include federal assistance programs or the means to "employ[] an in-home caregiver, mov[e] into assisted living, or otherwise secur[e] care . . . ." *United States v. Glover*, No. 4:23-cr-262, 2026 WL 1506514 (D. Idaho May 29, 2026). In this case, Defendant's mother may be eligible for substantial assistance from relevant state and federal public benefits programs, including Medicaid. *See* Broder et al., *Overview of Immigrant Eligibility for Federal Programs*, Nat'l Immig. L. Ctr. (Dec. 2025), https://media.nilc.org/wp-content/uploads/2024/05/overview-immeligfedprograms-2025-12-pdf.pdf; *id. Table 1*, https://media.nilc.org/wp-content/uploads/2024/04/tbl1_ovrvw-fed-pgms-rev-2025-12.pdf.

---

[10] District courts within the Fourth Circuit have concluded that similar asserted needs to care for ailing or aging parents or family members do not constitute an extraordinary and compelling reason for relief. *See, e.g.*, *United States v. Isom*, No. 1:03-CR-241-1, 1:03-CR-242-1, 2022 WL 1093499, at *4 (M.D.N.C. Apr. 12, 2022) (collecting cases); *United States v. Mazyck*, No. 2:14-cr-00844-DCN-2, 2023 WL 5431582, at *5 (D.S.C. Aug. 23, 2023) (collecting cases).

As the Supreme Court recently explained, "[a] reason is 'extraordinary' and 'compelling' only if it is sufficiently unusual and convincing to 'warrant' compassionate release." *Rutherford v. United States*, 146 S. Ct. 1320, 1332 (2026) (citing *Fernandez v. United States*, 146 S. Ct. 1292, 1303 n.4, 1307 (2026)). "Many inmates have aging parents with various ailments. If a sick parent—absent truly extraordinary circumstances—was considered a compelling reason, virtually any inmate seeking a sentence reduction on this ground could produce one." *United States v. Izatt*, No. 1:10-cr-112, 2025 WL 1529939, at *3 (D. Idaho May 28, 2025) (quoting *United States v. Crisp*, No. 1:11-cr-26, 2022 WL 3448307, at *5 (E.D. Cal. Aug. 17, 2022)); *accord Taveras*, 731 F. Supp. 3d at 100 (citations omitted). In this case, Mr. Fonguh has not shown that his mother is incapacitated as required to establish an extraordinary and compelling reason for relief pursuant to U.S.S.G. § 1B1.13(b)(3).

### B.  Mr. Fonguh Has Not Shown Any Relevant Sentencing Disparity.

While the Fourth Circuit has previously held that a disparity in sentencing may constitute an "extraordinary and compelling" reason for sentence reduction, *e.g.*, *United States v. Brown*, 78 F.4th 122, 124, 126, 131–32 (4th Cir. 2023), the Supreme Court has recently indicated that such a disparity between co-conspirators may not be an "extraordinary and compelling" reason for compassionate release. *See United States v. Johnson*, No. 25-551, — S. Ct. —, 2026 WL 1640930 (Jun. 8, 2026), *vacating*, 143 F.4th 212 (4th Cir. 2025). Nevertheless, there is no meaningful sentencing disparity at issue in this case. Mr. Fonguh's sentence is identical to those of his co-defendants, Mr. Nji and Mr. Tita: a total of 63 months'

imprisonment, plus two years of supervised release.[11] *United States v. Nji*, 159 F.4th 259, 263, 265 (4th Cir. 2025), *cert. denied*, —S. Ct.—, 2026 WL 795080 (Mar. 23, 2026); *see* (ECF No. 246-8 \*SEALED\* at 4–5, 9–10). In fact, at Defendant's sentencing hearing, this Court matched Mr. Fonguh's sentence to Mr. Nji's because Mr. Fonguh's "situation [wa]s identical to Mr. Nji['s]; identical in every way, including [his] financial ability to pay a fine, [and] including the exposure here." (ECF No. 238 at 62.) Mr. Nji and Mr. Tita, like Mr. Fonguh, pleaded not guilty, and both were tried and convicted of the exact same offenses as Mr. Fonguh, (ECF No. 108), rendering them the most similarly situated co-defendants.

Defendant focuses his argument on the sentences of three higher-up co-conspirators charged in separate cases: Tamufor St. Michael, (Amended Judgment, ECF No. 76, *United States v. St. Michael*, Crim. No. RDB-20-15), Alambi Walters Muma (Judgment, ECF No. 65 \*SEALED\*, *United States v. Muma*, Crim. No. RDB-21-194), and Roger Akem (Judgment, ECF No. 34, *United States v. Akem*, Crim. No. RDB-20-150). (*See* ECF No. 246-8 \*SEALED\* a 4–5, 9–10.) Generally, a defendant must demonstrate changes *not considered at sentencing* that warrant a reduction in sentence. *See, e.g.*, *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021) ("[F]acts that existed when the defendant was sentenced cannot later be construed as 'extraordinary and compelling' justifications for a sentence reduction."), *cert. denied*, 142 S. Ct. 2771 (2022); *United States v. Bryant*, 144 F.4th 1119, 1128 (9th Cir. 2025) (limiting compassionate release analysis to "whether *new* circumstances warrant discretionary relief" (emphasis added) (citation omitted)), *cert. denied*, —S. Ct. —, 2026 WL 1127186 (2026);

---

[11] Mr. Fonguh and Mr. Nji, unlike Mr. Tita, were subject to a $25,000 fine. (ECF No. 184 at 5–6; ECF No. 201 at 5–6; ECF No. 221 at 5–6.) The fine was waived with respect to Mr. Tita due to his inability to pay. (ECF No. 202 \*SEALED\* at 1.)

*Fernandez v. United States*, 146 S. Ct. 1292, 1307 (2026) (Sotomayor, J., concurring) ("For a reason to 'warrant' a change of a sentence, . . . it cannot have been a consideration that was part of the initial sentencing determination to begin with."). In this case, the Court at sentencing overtly acknowledged the differences between the shorter sentences imposed as to more culpable co-conspirators' and the 63 months' imprisonment imposed upon Mr. Fonguh, Mr. Nji, and Mr. Tita. [12] (ECF No. 238 at 43–44.)

Significantly, however, as Mr. Fonguh acknowledges, St. Michael, Muma, and Akem each pleaded guilty to one offense and cooperated with the Government, while Mr. Fonguh pleaded not guilty and was convicted of three offenses after a jury trial. (ECF No. 90 *SEALED*; 91 *SEALED*; 92 *SEALED*; ECF No. 108 at 1, 4, 5; ECF No. 246-8 *SEALED* a 4–5, 9–10.) It is well-settled in the Fourth Circuit that "individuals who go to trial and those who plead guilty . . . are not similarly situated for sentencing purposes." *United States v. Suzi*, 674 F.3d 278, 288 (4th Cir. 2012); *accord United States v. Jeffrey*, 631 F.3d 669, 679 (4th Cir. 2011), *cert. denied*, 565 U.S. 855 (2011); *United States v. Gillespie*, 27 F.4th 934, 945 (4th Cir. 2022), *cert. denied*, 143 S. Ct, 164 (2022). After all, "our 'system of pleas . . . often results in individuals who accept a plea bargain receiving shorter sentences than other individuals who are less morally culpable but take a chance and go to trial.'" *United States v. Fernandez*, 104 F.4th 420, 428 (2d Cir. 2024), *aff'd*, 146 S. Ct. 1292 (2026) (quoting *Missouri v. Frye*, 566 U.S. 134, 143–44 (2012)). Accordingly, Mr. Fonguh has not shown that his sentence is disparately long relative to *similarly situated* defendants.

---

[12] Each of the referenced co-conspirators was sentenced before Mr. Fonguh. Muma was sentenced on May 3, 2023. (RDB-21-194, ECF No. 65 *SEALED*.) St. Michael was originally sentenced on May 16, 2023, (RDB-20-15, ECF No. 72). Finally, Akem was sentenced on May 22, 2023. (RDB-21-194, ECF No. 34.)

14

### C. Rehabilitation and Recidivism are Not Extraordinary and Compelling Reasons Warranting Compassionate Release.

Finally, Mr. Fonguh asserts that his rehabilitation efforts and asserted low propensity to recidivate constitute "extraordinary and compelling reasons" warranting his early release. (ECF No. 246-8 *SEALED* at 9–10.) As Mr. Fonguh acknowledges, however, neither his rehabilitation nor his low recidivism can "be considered extraordinary and compelling reasons by themselves." (*Id.* at 9); 28 U.S.C. § 994(t); *see also United States v. Burleigh*, 145 F.4th 541, 552 (4th Cir. 2025) (acknowledging that rehabilitation alone is insufficient for relief but considering it alongside other factors, such as the nature and severity of the offense); *United States v. Davis*, 99 F.4th 647, 659–61 (4th Cir. 2024) (acknowledging that a low risk of recidivism favors relief but alone is insufficient to constitute an "extraordinary and compelling" reason). While Mr. Fonguh's efforts while incarcerated are commendable, see (ECF No. 246-8 *SEALED* at 9), they are not enough—standing alone—to constitute an "extraordinary and compelling" reason for compassionate release. Accordingly, Mr. Fonguh has not established an extraordinary and compelling reason for relief.

Failure to establish an extraordinary and compelling reason for relief precludes eligibility for compassionate release. *See, e.g.*, *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022) (explaining extraordinary and compelling reason is "the threshold eligibility requirement for obtaining relief"). For this reason, this Court need not evaluate the sentencing factors articulated in 18 U.S.C. § 3553(a). *See, e.g.*, *Rutherford v. United States*, 146 S. Ct. 1320, 1333 (2026) (explaining that analysis of "extraordinary and compelling reasons" serves as "a distinct analytical step [from the § 3553(a) factors analysis] that imposes independent and ascertainable limits on access to compassionate release" and must be completed "[b]efore determining the

extent of a reduction based on the § 3553(a) factors" (citations omitted)); *Burleigh*, 145 F.4th at 551 n.7 ("[T]he district court did not have to address the § 3553(a) factors once it found that there were not extraordinary and compelling reasons [warranting compassionate release]." (citation omitted)).

## CONCLUSION

For the reasons set forth above, Mr. Fonguh has not established that he is eligible for relief, and his Motion for Compassionate Release (ECF No. 246) must be DENIED.

A separate Order follows.

Date: June 18, 2026

_/s/_____
Richard D. Bennett
United States Senior District Judge

16